UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Universal Hospital Services, Inc.,  Civil No. 05-1766 (DWF/SRN)

Plaintiff,

v.  **MEMORANDUM**
**OPINION AND ORDER**

Robert L. Hoff,

Defendant.

---

Matthew E. Damon, Esq., and Sandra L. Jezierski, Esq., Halleland Lewis Nilan & Johnson PA, counsel for Plaintiff.

Michael B. Chase, Esq., Chase Law Office, counsel for Defendant.

---

## Introduction

The above-entitled matter came before the undersigned United States District Court Judge on November 4, 2005, pursuant to Defendant Robert L. Hoff's ("Hoff") Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue, or, in the alternative, to Transfer Venue. For the reasons set forth below, Hoff's Motion to Dismiss is denied.

## Background

Plaintiff Universal Hospital Services, Inc., ("UHS"), is a nationwide medical equipment and services outsourcing company. (Complaint at 1.) UHS' primary business is the rental of medical equipment to health care providers. (*Id.*) UHS was headquartered and maintained its corporate office

in Bloomington, Minnesota, during the period of Hall's employment by UHS.[1] (Affidavit of Darren J. Thieding in Opposition to Defendant's Motion to Dismiss ("Thieding Aff.") at ¶ 5.)

UHS hired Hoff as an Account Manager in 1994. (*Id.* at ¶ 7.) In 1997, UHS promoted Hoff to District Manager. In 2001, UHS promoted Hoff to Division Manager. (*Id.*) Hoff held this position until 2003, when UHS demoted him to Account Manager. (*Id.*) As Account Manager, Hoff's primary duties were to cultivate and promote new sales relationships, manage UHS' relationships with existing customers, expand services to new and existing customers, and coordinate sales strategies. (Thieding Aff. at ¶ 8.) Hoff's territory included northern Virginia, eastern West Virginia, Maryland, and the District of Columbia. (Complaint at 2.) At all times relevant to UHS' Complaint, Hoff resided in Severn, Maryland. (Affidavit of Robert L. Hoff in Support of Motion to Dismiss ("Hoff Aff.") at ¶ 3.) Hoff currently resides in Zephyrhills, Florida. (*Id.* at ¶ 2.)

On or about June 4, 1998, Hoff signed a Confidentiality/Non-Competition Agreement (the "Agreement") with UHS in exchange for approximately $100,000 worth of stock options. (Thieding Aff. at ¶ 21; Hoff Aff. at ¶ 5; oral argument.) The Agreement prohibited Hoff from competing with UHS within a 100 mile radius of Columbia, Maryland, for 12 months after termination of his employment with UHS. (Attachment to Thieding Aff. ("Attachment") at ¶ 3.) The Agreement also provided:

> 10.) <u>Applicable Law.</u>  This Agreement, the construction of its terms, and interpretation of the parties rights and duties shall be governed by and construed according to the laws of the State of Minnesota. Any lawsuits arising under the terms of the Agreement may be brought in the state or federal courts located in Minnesota, and

---

[1]   UHS' principal place of business is currently Edina, Minnesota. (Complaint at 1.)

Employee hereby consents to the jurisdiction of such state or federal courts. (Attachment at ¶ 10.)  Before signing the Agreement, Hoff requested that Michael Johnson, UHS' Vice president of Human Resources ("Johnson"), designated Maryland, rather than Minnesota, as the venue in the forum selection clause.  (Hoff Aff. at ¶ 7.)  Johnson informed Hoff that the terms of the Agreement were not subject to negotiation.  (*Id.*)

UHS terminated Hoff's employment on November 22, 2004, for violation of company policies. (Thieding Aff. at ¶ 11.)  Hoff alleges that UHS wrongfully terminated his employment and retaliated against him because of his sexual orientation.  (Hoff Aff. at ¶ 9.)  Hoff subsequently filed a Charge of Discrimination with the EEOC and the Howard County Human Rights Commission.  (*Id.*)  The charge is still pending.  (*Id.*)  Hoff intends to file a lawsuit against UHS in Maryland for illegal discrimination and retaliation.  (*Id.*)

UHS alleges that since Hoff's termination, Hoff violated the Agreement by soliciting UHS customers on behalf of UHS competitors.  (Complaint at 4.)  In a letter dated December 22, 2004, UHS' Senior Vice President of Human Resources and Development, Walter Chesney, reminded Hoff of his obligations under the Agreement and demanded compliance.  (*Id.*)  On July 1, 2005, UHS' counsel sent another letter to Hoff, demanding that he comply with the Agreement.  (*Id.* at 5.)  UHS then brought this action in Hennepin County District Court, alleging violations of the Agreement. (Complaint at 4.)  In its Complaint, UHS asserted claims of breach of contract, misappropriation of confidential information, and unfair competition.  Hoff removed the action to the District Court for the District of Minnesota based on diversity of citizenship.

**Discussion**

I. **Personal Jurisdiction**

When personal jurisdiction has been challenged, the plaintiff has the burden to show that personal jurisdiction exists. *See Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996) (citing *Gould v. P.T. Krakatau Steel*, 957 F.2d 573, 575 (8th Cir. 1992)). However, to survive a motion to dismiss for lack of personal jurisdiction, the plaintiff need only make a *prima facie* showing of personal jurisdiction over the defendant. *Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd.,* 89 F.3d 519, 522 (8th Cir. 1996) (citing *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1387 (8th Cir. 1995)). When considering whether personal jurisdiction exists, the court may consider matters outside the pleadings; "the court may inquire, by affidavits or otherwise, into the facts as they exist." *Stevens v. Redwing*, 146 F.3d 538, 543 (8th Cir. 1998) (quoting *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947)). For the purposes of determining whether the plaintiff has made a prima facie showing of personal jurisdiction, the court must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor. *See Digi-Tel*, 89 F.3d at 522 (citing *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991)).

In determining whether a court has personal jurisdiction over a non-resident defendant, a court must ordinarily satisfy both the requirements of the state long-arm statute and of federal due process. *See Digi-Tel*, 89 F.3d at 522 (citing *Northrup King*, 51 F.3d at 1387). However, because the Minnesota long-arm statute extends jurisdiction to the maximum limit consistent with due process, a court in Minnesota need only evaluate whether the requirements of due process are satisfied. *Wessels,*

*Arnold & Handerson v. National Medical Waste, Inc.*, 65 F.3d 1427, 1431 (8th Cir. 1995). Therefore, when analyzing most personal jurisdiction questions in Minnesota, courts may simply apply the federal standards. *Valspar Corp. v. Lukken Color Corp.*, 495 N.W.2d 408, 411 (Minn. 1992).

Due process is satisfied when a defendant consents to personal jurisdiction by entering into a contract that contains a valid forum selection clause. *Dominium Austin Partners v. Emerson*, 248 F.3d 720, 726 (8th Cir. 2001) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985)). In general, forum selection clauses are presumed valid. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 9-10 (1972); *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988); *Knutson v. Rexair, Inc.*, 749 F. Supp. 214, 217 (D. Minn. 1990). However, they will not be enforced if the forum selection clause is unreasonable or if the contract itself is one of adhesion. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 589 (1991); *Matthiessen v. National Trailer Convoy Inc.*, 294 F. Supp. 1132, 1135 (D. Minn. 1968).

In determining whether a forum selection clause is reasonable, courts have looked to factors such as: (1) the law governing the contract; (2) where the contract was executed; (3) where the transactions are to be performed; (4) the availability of remedies in the designated forum; (5) the public policy of the initial forum state; (6) the location of the parties, the convenience of prospective witnesses, and the accessibility of evidence; (7) the relative bargaining power of the parties and the circumstances surrounding their dealings; (8) the presence or absence of fraud, undue influence, or other extenuating circumstances; and (9) the conduct of the parties. 15 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3803.1 (2d ed.1986) (citing *D'Antuano v. CCH Computax Sys., Inc.*, 570 F. Supp. 708, 712 (D. R.I. 1983)).

Hoff asserts that the forum selection clause is unreasonable because (1) Minnesota is an inconvenient place for trial; (2) the clause is contained in an "adhesion contract;" and (3) the clause is otherwise unreasonable. Hoff asserts that the forum selection clause is otherwise unreasonable because the interests of justice would be served by consolidating this action with Hoff's intended employment discrimination action against UHS. Additionally, Hoff asserts that the forum-selection clause is unreasonable because the anticipated cause of action has no relation to Minnesota. Finally, Hoff asserts that the clause is unreasonable because it is contained within a restrictive non-competition agreement. UHS, on the other hand, contends that the Court has personal jurisdiction over Hoff pursuant to the forum selection clause in the parties' valid contract. Alternatively, UHS contends that Hoff's contacts with Minnesota satisfy personal jurisdiction.[2]

The Court finds that Hoff consented to personal jurisdiction in Minnesota by entering into a contract with UHS that contained a valid forum selection clause. Hoff has not demonstrated that the forum selection clause is unreasonable. Hoff has not demonstrated that Minnesota is an inconvenient venue for trial, given that UHS maintains its headquarters in Minnesota. Moreover, UHS indicates that several of its witnesses reside in Minnesota. The Court does not find that Minnesota is an inconvenient venue for trial simply because Hoff does not reside in Minnesota.

Additionally, the Court finds no merit to Hoff's assertion that the forum selection clause is

---

2   Personal jurisdiction is satisfied when a defendant has "certain minimum contacts" with the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington, Office of Unemployment Comp. and Placement*, 326 U.S. 310, 316 (1945) (internal quotations omitted). The defendant's conduct and connection with the forum state must be such that the defendant should reasonably anticipate being
(Footnote continued on next page.)

contained in an adhesion contract. While in some cases a contract between an individual and an organization or corporation may indicate an imbalance of bargaining power, such is not the case here. Hoff knowingly entered the Agreement in exchange for valuable consideration—approximately $100,000 in stock options. Moreover, that UHS offered the contract on a "take it or leave it" basis does not render the contract unreasonable. *See Dominion Partnership*, 248 F.3d at 726–27. Further, Hoff was fully aware that the covenant not to compete contained a forum selection clause. Indeed, Hoff admits that he negotiated with Johnson to designate Maryland as the venue in the forum selection clause. That Hoff was unsuccessful in his negotiations is irrelevant. Accordingly, the valid forum selection clause was not contained in an adhesion contract.

Finally, the Court finds that the forum selection clause is not "otherwise unreasonable." First, the Court rejects Hoffs' assertion that the interests of justice would be served by consolidating this action with Hoff's intended employment discrimination action against UHS. The Court finds it premature to consider Hoffs' assertion that the cases should be consolidated when Hoff has not yet initiated a lawsuit against UHS. Second, the Court rejects Hoffs' assertion that the forum selection clause is unreasonable because the anticipated cause of action has no relation to Minnesota. Here, UHS intends to call witnesses who reside in Minnesota. Finally, the Court finds no merit to Hoffs' assertion that the clause is unreasonable because it is contained within an allegedly restrictive non-competition agreement. The Court finds that UHS gave Hoff valuable consideration in exchange for his promise not to compete.

---

(Footnote continued from previous page.)
haled into court there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Accordingly, the Court does not find UHS' forum selection clause to be unreasonable. The Court finds that Hoff has consented to personal jurisdiction in Minnesota by entering into a contract that contains a valid forum selection clause. Because the Court concludes that Hoff consented to personal jurisdiction in Minnesota, the Court need not address UHS' alternative assertion that Hoff had sufficient contacts with Minnesota to support personal jurisdiction.

**II.     Venue**

The venue of removed actions is governed by 28 U.S.C. § 1441(a). *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665 (1953). Section 1441(a) states that the proper venue of an action that has been removed is "the district court of the United States for the district and division embracing the place where such action is pending."

In his submission to the Court, Hoff relied on 28 U.S.C. § 1391 in support of his contention that venue is improper in Minnesota. However, 28 U.S.C. § 1441(a) is the appropriate standard for determining whether venue is proper in a suit that has been removed to federal court. Pursuant to 28 U.S.C. § 1441(a), venue is proper only in the district wherein lies the state court in which the action is brought. The Court finds that the District of Minnesota is the district embracing Hennepin County, and, therefore, venue is proper in Minnesota.

**III.    Transfer**

Alternatively, Hoff contends that pursuant to 28 U.S.C. § 1404(a), the Court should transfer the case to a United States District Court in Maryland. Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Generally, transfer under section 1404(a) "should not be freely granted." *In re Nine Mile Ltd.*, 692 F.2d 56, 61 (8th Cir. 1982), *overruled on other grounds*, *Missouri Housing Development Com'n v. Brice*, 919 F.2d 1306, 1310–11 (8th Cir. 1990).  The party seeking transfer bears the burden of proof to show that the balance of factors "strongly" favors the movant. *United Mortg. Corp. v. Plaza Mortg. Corp.*, 853 F. Supp. 311, 315 (D. Minn. 1994).  In considering a motion to transfer pursuant to section 1404(a), the Court must consider "a number of case-specific factors," such as the presence or absence of a forum selection clause, convenience of the parties and witnesses, access to sources of proof, and the interest of justice. *Stewart Org.*, 487 U.S. at 29.  The Court finds that the existence of the valid forum selection clause weighs in favor of transfer.  Next, the Court considers the following additional factors.

### A.   Convenience of Parties

A presumption in favor of plaintiff's choice of forum exists. *Christensen Hatch Farms, Inc. v. Peavey Co.*, 505 F. Supp. 903, 911 (D. Minn. 1981).  Section 1404(a) provides for transfer to a more convenient forum, "not to a forum likely to prove equally convenient or inconvenient, and a transfer should not be granted if the effect is simply to shift the inconvenience to the party resisting the transfer." *Graff v. Qwest Communications Corp.*, 33 F. Supp. 2d 1117, 1121 (D. Minn. 1999) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 646 (1964)).

Hoff asserts that transferring the case to Maryland would be more convenient for both parties because all of the evidence and witnesses are located in Maryland.  UHS, on the other hand, asserts that the Maryland venue is inconvenient for both parties because Hoff resides in Florida and UHS is headquartered in Minnesota.  The Court finds that transferring venue to Maryland would equally

9

inconvenience both parties. The Court finds that this factor does not weigh in favor of transfer.

### B. Convenience of Witnesses

The convenience of witnesses is an important factor for the Court and the parties because it determines the "relative ease of access to sources of proof." *Nelson v. Master Lease Corp.*, 759 F. Supp. 1397, 1402 (D. Minn. 1991) (quotation omitted). In considering the issue of convenience to witnesses, courts have focused on a number of factors including the number of non-party witnesses, the location of all witnesses, and the preference of courts for live testimony as opposed to depositions. *Graff*, 33 F. Supp. 2d at 1121 (citing *Van Dusen*, 376 U.S. at 646).

Hoff claims that transferring the case to Maryland would be more convenient for the witnesses because all witnesses are located in Maryland. UHS has identified several Minnesota residents as potential witnesses and points out that Hoff has not identified a single Maryland resident whom he expects to call as a witness. The Court finds that this factor does not weigh in favor of or against transfer because some witnesses reside in Minnesota and other likely witnesses may reside in Maryland.

### C. Interests of Justice

The Court must also evaluate what venue will best promote the interests of justice. *Graff*, 33 F. Supp. 2d at 1122. A number of relevant considerations include relative familiarity with the law to be applied, the relative ability of the parties to bear the expenses of litigating in a distant forum, judicial economy, and the plaintiff's choice of forum. *Id.*

Hoff asserts that judicial economy would be served by litigating in Maryland because the issues arose in Maryland and a Maryland court could consolidate Hoff's intended discrimination suit against

UHS with this case. Hoff also asserts that litigating in Minnesota increases both parties' costs. UHS asserts that justice is served by respecting UHS' choice of forum.

The Court finds that justice is served by respecting the valid forum selection clause. Additionally, the Court finds no merit in Hoff's assertion that the Court should transfer the case to Maryland so that it can be consolidated with an employment discrimination suit that Hoff has not yet initiated. The Court also finds that Hoff has not demonstrated that litigating in Maryland will lower the parties' costs. Thus, the interests of justice considerations do not weigh in favor of transfer.

Hoff has not met his burden of demonstrating that the balance of factors strongly favors his request to transfer the case to a United States District Court in Maryland. Thus, the Court declines Hoff's transfer request.

Accordingly, **IT IS HEREBY ORDERED THAT:**

1. Defendant Hoff's Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue, or, in the alternative, to Transfer (Doc. No. 2) is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  November 28, 2005         s/Donovan W. Frank
                                  DONOVAN W. FRANK
                                  Judge of United States District Court